## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| BRANDY N. FLANAGAN | * | |
| Plaintiff | * | |
| v. | * | Civil No. 08-CV-421-BEL |
| ANNE ARUNDEL COUNTY, *et al.* | * | |
| Defendants | * | |

\* \* \* \* \* \* \*

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO DISMISS

Defendants Anne Arundel County, Anne Arundel County Police Department, James Teare, Sr. and Thomas Shanahan ("Defendants"), by their counsel, Hamilton F. Tyler, pursuant to Rule 12(b) of the Federal Rules of Civil Procedure and Local Rule 105, move to dismiss this action on the grounds that the Complaint fails to state any claim or cause of action upon which relief can be granted.

## TABLE OF CONTENTS

Page

I. INTRODUCTION AND FACTS ............................................................................3

II. STANDARD ......................................................................................................5

III. ARGUMENT .....................................................................................................6

    A. Arguments Applicable to Both Federal and State Claims ................................6

        1. The Anne Arundel County Police Department lacks the legal identity necessary to be named as a Defendant. ....................................6

        2. Plaintiff is not entitled to punitive damages against Anne Arundel County ........................................................................7

B.  Federal Claims............................................................................................... 9

    1.   Plaintiff has failed to state a claim upon which relief may
         be granted under Count 3, violation of  42 U.S.C. § 1983. .................9

        a.   Failure to Allege Policy, Practice or Custom of the County........12

        b.   Causation ...................................................................................15

    2.   Plaintiff's § 1983 claims Against Defendants Teare and
         Shanahan in Count 3 are barred by qualified immunity ...................17

C.  State Law Claims ...........................................................................................18

    1.   Plaintiff may not maintain a state law tort claim directly
         against Anne Arundel County...........................................................18

    2.  Counts 1, 4, 6, 8 and 11 should be dismissed because Anne Arundel
        County has governmental immunity for all state law claims related to
        the operation of its police force. ........................................................22

    3.  There is no separate claim for "*Respondeat Superior*" (Count 8)
        under Maryland law ..........................................................................25

    4.  Counts 1, 4, 6, 8 and 11 should be dismissed because Chief Teare and
        former Chief Shanahan are not subject to liability on state law claims
        because of public official immunity ...................................................25

    5.  Plaintiff has failed to state a claim against Defendants under Count
        4, Intentional Infliction of Emotional Distress ...................................29

    6.  Count 6 of the Complaint, "Unreasonable Publicity to Private Life,"
        fails to state a claim Against Defendants Anne Arundel County
        and the Anne Arundel County Police Department. .............................31

    7.  Count 2 of the Complaint, "Violation of Maryland Declaration of
        Rights," fails to state a claim against any of the Defendants...............33

        a.   The failure to train and failure to supervise counts
            should be dismissed based upon the arguments in
            response to the Federal claims. ........................................33

        b.   Anne Arundel County may not be held liable for the
            actions of Mosmiller under the doctrine of
            *respondeat superior*. ........................................................34

IV.     CONCLUSION.................................................................................................37

I.      **INTRODUCTION AND FACTS**

Plaintiff Brandy Flanagan ("Plaintiff") filed the instant action in this Court alleging that she was injured on January 20, 2007 when Anne Arundel County Police Officer Joseph Mosmiller stopped the vehicle she was operating at 1:30 a.m. Complaint at ¶6.   Plaintiff further alleges that Officer Mosmiller ordered Plaintiff to follow him in her vehicle to the Rivera Beach library. Complaint at ¶6.   After both vehicles traveled to the Rivera beach Library, Officer Mosmiller then left, apparently to respond to another call, and ordered Plaintiff not to leave until he returned. Complaint at ¶6.   When Officer Mosmiller returned several minutes later, he then ordered Plaintiff to again follow him in her vehicle to the Community United Methodist Church a short distance away.  Complaint at ¶6.

In the parking lot of the church, the third location of the interaction between Plaintiff and Mosmiller, Plaintiff alleges that Officer Mosmiller performed several field sobriety tests upon Plaintiff and informed her that she had failed the tests, notwithstanding the fact that she was not intoxicated. Complaint at ¶6.    Officer Mosmiller told Plaintiff that he would take her to jail unless she would, "show me your tits."  Complaint at ¶6.

Plaintiff complied with Officer Mosmiller's request and lifted her shirt.  Complaint at ¶6. Officer Mosmiller touched Plaintiff's breast and took a picture with his cell phone.  Complaint at ¶6. Plaintiff immediately went to the police station and reported the incident.  Complaint at ¶6.  It was later determined that Officer Mosmiller did not call in his stop of Plaintiff in violation of regulations. Complaint at ¶8.   Officer Mosmiller immediately had his police powers suspended and ultimately never returned to the force.  On July 27, 2007, Officer Mosmiller pled guilty to the criminal count of

Misconduct in Office based upon the incident with Plaintiff.  Complaint at ¶8.  As part of the plea

agreement Officer Mosmiller was forced to resign from the Anne Arundel County Police

Department.  Complaint at ¶10.

Plaintiff further alleges that Mosmiller was not qualified to be a police officer because he did

not meet the necessary criteria and/or pass the necessary tests.  Complaint at ¶14.  Plaintiff contends

that Mosmiller was hired by for Chief Shanahan notwithstanding said alleged failures.  Complaint at

¶14.  Plaintiff alleges that Defendants failed to train and supervise Mosmiller in order to prevent his

conduct that lead to the incident involving Plaintiff.  Complaint at ¶16.

Plaintiff filed the instant action against Defendants Anne Arundel County, the Anne Arundel

County Police Department, Police Chief James Teare, Sr., former Police Chief P. Thomas Shanahan,

and former police officer Joseph Mosmiller.  A breakdown of the Counts pled against each

Defendant is as follows:

| <u>**Count**</u> | <u>**Complaint Description**</u> | <u>**Defendants**</u>[1] |
|---|---|---|
| 1 | "Negligent Hiring, Training, Supervision and Retention" | Anne Arundel County<br>Anne Arundel Co. Police  Dept.<br>James Teare, Sr.<br>Thomas Shanahan |
| 2 | "Violation of Maryland Declaration of Rights" | Anne Arundel County<br>Anne Arundel Co. Police  Dept.<br>James Teare, Sr.<br>Thomas Shanahan<br>Joseph Mosmiller |
| 3 | "Violation of 42 U.S.C. Section 1983" | Anne Arundel County<br>Anne Arundel Co. Police  Dept.<br>James Teare, Sr. |

---

1 Each count simply states that recovery is sought against "Defendants" without specifying which Defendant.  In
reviewing the specific allegations set forth in each count, it appears as if some Defendants are excluded from some
of the counts.

|   |   | Thomas Shanahan |
|---|---|---|
|   |   | Joseph Mosmiller |
|   |   |   |
| 4 | "Intentional Infliction of Emotional Distress" | Anne Arundel County |
|   |   | Anne Arundel Co. Police  Dept. |
|   |   | James Teare, Sr. |
|   |   | Thomas Shanahan |
|   |   | Joseph Mosmiller |
|   |   |   |
| 5 | "Intrusion Upon Seclusion" | Joseph Mosmiller |
|   |   |   |
| 6 | "Unreasonable Publicity to Private Life" | Anne Arundel County |
|   |   | Anne Arundel County Police Dept. |
|   |   |   |
| 7 | "Breach of Fiduciary Duty" | Joseph Mosmiller |
|   |   |   |
| 8 | "Respondeat Superior" | Anne Arundel County |
|   |   | Anne Arundel Co. Police  Dept. |
|   |   | James Teare, Sr. |
|   |   | Thomas Shanahan |
|   |   |   |
| 9 | "Assault and Battery" | Joseph Mosmiller |
|   |   |   |
| 10 | "False Imprisonment and False Arrest" | Joseph Mosmiller |
|   |   |   |
| 11 | "Action Under Local Government Tort Claims Act." | Anne Arundel County |
|   |   | Anne Arundel County Police Dept. |

For the reasons stated below, the Complaint should be dismissed and judgment entered against Plaintiff in favor of Defendants Anne Arundel County, Anne Arundel County Police Department, James Teare, Sr. and Thomas Shanahan.

## II.    STANDARD

In a Rule 12 (b)(1) motion, the court may find insufficient allegations in the pleading to establish subject matter jurisdiction.  Similar to a Rule 12(b)(6) motion, the court must view the alleged facts in the light most favorable to the Plaintiff.  Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982).

Dismissal is proper, under Fed. R. Civ. P. 12(b)(6), when it appears beyond doubt that Plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Hughes Automotive, Inc. v. Mid-Atlantic Toyota Distrib., Inc., 543 F.Supp. 1056 (D. Md. 1982).   In considering whether to grant dismissal, the factual allegations of Plaintiff's Complaint must be taken as true. EEOC v. Maryland Nat-Capital Park & Planning, 673 F. Supp. 746 (D. Md. 1987).

Despite this generous standard, for purposes of determining whether Plaintiff has failed to state a cause of action, Plaintiff still must meet a minimum standard of setting forth sufficient information to suggest that there exists some recognized legal theory upon which relief can be granted. Caudle v. Thomason, 942 F.Supp. 635 (D.D.C. 1996).   Accordingly, this Court must dismiss Plaintiff's Complaint where (even assuming all the factual allegations are true) it lacks subject matter jurisdiction or Plaintiff has failed to establish a right to relief based upon any cause of action. Gregg v. Barrett, 771 F.2d 539 (D.C. Cir. 1985).

## III.    ARGUMENT

### A.    Arguments Applicable to Both Federal and State Claims

#### 1.    The Anne Arundel County Police Department lacks the legal identity necessary to be named as a Defendant.

In order to sue a department of a municipality, that department must be a separate entity. McQuillin Mun. Corp. § 49:2 at 207 (3rd ed. 2004 rev. vol.).  Unless the political entity that created the department has taken explicit steps to grant the department the authority, the department lacks the capacity to be sued. Id.  More specifically, "[w]here a police department is an integral part of the [local] government as the vehicle through which the [local government] fulfills its policing functions, it is not an entity subject to suit." Eddy v. City of Miami, 715 F. Supp. 1553, 1556 (S.D.

Fla. 1989) citing Vinson v. Richmond Police Dep't, 567 F.2d 263 (4th Cir. 1977); Shelby v. City of Atlanta, 578 F. Supp. 1368 (N.D. Ga. 1984).

Section 103 of the Charter of Anne Arundel County, Maryland, states that the County's "corporate name shall be 'Anne Arundel County, Maryland,' and it shall thus be designated in all actions and proceedings touching its rights, powers, properties, liabilities, and duties." The Anne Arundel County Police Department has not been established as a separate corporate body. See Charter of Anne Arundel County, Sections 543-544. The County Police Department is merely an operating department within the executive branch of County government. Accordingly, the Police Department of Anne Arundel County is not a proper party to this action.

>       **2.      Plaintiff is not entitled to punitive damages against Anne Arundel County.**

Plaintiff's state law claims are subject to the Local Government Tort Claims Act, Md. Code Ann., Cts. & Jud. Proc. §5-301 et seq. (2006 repl. vol.) ("LGTCA"). Thomas v. City of Annapolis, 113 Md.App. 440, 457, 688 A.2d 448 (1997). The LGTCA covers local governments and it applies to all torts without distinction. Id.

Section 5-301(d) defines "local government" as a "chartered county established under Article 25A of the Code." Anne Arundel County, Maryland, is a political subdivision and chartered county by virtue of its charter. Its charter was enacted pursuant to Md. Code Ann., Article 25A. Section 5-303(c)(1) of the LGTCA could not be any clearer:

"[a] local government may **not** be liable for punitive damages."

The principle that local governments cannot be liable for punitive damages is well established. In Herilla v. Mayor and City Council of Baltimore, 37 Md.App. 481, 378 A.2d 162 (1977), a landowner brought suit against the City to recover damages inflicted upon his property.

The landowner sued the City for negligence, trespass, and conversion and asked for both compensatory and punitive damages.  The Court of Special Appeals held:

> Generally, in the absence of statutory authority exemplary or punitive damages may not be recovered against a municipality [case cites omitted]. There is no such statutory authority in Maryland, hence, Herilla's claim against the City must be confined to compensatory damages.
>
> * * * *
>
> The public policy which motivates the conclusion appears to be sound.  Since punishment is the objective, the people who would bear the burden of the award the citizens are the self-same group who are expected to benefit from the public example which the punishment makes of the wrongdoer.
>
> * * * *
>
> The deterrence element likewise adds little justification for this type of award against a municipality.  In the first place it is to be assumed that the municipal officials will do their duty and if discipline of a wrongdoing employee is indicated, appropriate measures will be taken without a punitive award.  Further, a huge award against the City would not necessarily deter other employees who generally would be unlikely to be able to pay a judgment assessed against them personally.

Id. at 492-493.  There is absolutely no statutory authority permitting a punitive damage recovery against Anne Arundel County, Maryland or any other local government.  The LGTCA provides for the exact opposite.

The same purpose and policy has resulted in the unavailability of punitive damages against municipalities under federal law as well. In City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 101 S.Ct. 2748 (1981), the Supreme Court of the United States applied the same logic and reasoning contained within Herilla in holding that municipalities were immune from punitive damages under Section 1983.  The Supreme Court first concluded that, by the year 1871 when Section 1983 was

enacted, "municipal immunity from punitive damages was well established at common law." <u>Id</u>. at 263, 101 S.Ct. 2748. Thus, if Congress intended to subject municipalities to punitive damage awards under Section 1983, Congress would have had to explicitly so provide via the §1983 statute. It did not.

The Supreme Court then turned to the question of whether the two major policy arguments for punitive damages—deterrence and retribution—would be advanced by assessing punitive damages against municipalities. The Court concluded that the policy arguments for punitive damages were not justified in the case of municipalities. The Court reasoned that punitive damages could "create a serious risk to the financial integrity" of cities. <u>Id</u>. at 270, 101 S.Ct. 2748. In addition, "[p]unitive damages imposed on a municipality are in effect a windfall to a fully compensated plaintiff, and are likely accompanied by an increase in taxes or a reduction of public services for the citizens footing the bill:  Neither reason nor justice suggests that such retribution should be visited upon the shoulders of blameless or unknowing taxpayers." <u>Id</u>. at 267, 101 S.Ct. 2748. Thus, Plaintiff's claims for punitive damages against Anne Arundel County, Maryland under both state and federal law fail as a matter of law.

### B.     Federal Claims

#### 1.     Plaintiff has failed to state a claim upon which relief may be granted under Count 3, violation of 42 U.S.C. §1983.

To state a claim under 42 U.S.C. § 1983, as Count 3 of the Complaint purports to do, the Plaintiff must allege *both* a deprivation of some right or privilege secured by the Constitution or the laws of the United States and that the deprivation was caused by a state actor. <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988); <u>see</u> <u>also</u> <u>Brown v. Kennedy Krieger Institute, Inc.</u>, 997 F. Supp. 661, 666 (D. Md. 1998). Because 42 U.S.C. § 1983 does not create substantive rights, but simply provides a

remedy for the deprivation of rights established by the United States Constitution or other federal law, an underlying constitutional right must be identified and found to exist before a § 1983 action will lie.  Baker v. McCollan, 443 U.S. 137, 144, n3 (1979).

Simply because a plaintiff alleges conduct that may appear on its face to establish tortious conduct, does not mean that he has stated a claim under §1983.  As reiterated many times by the Untied States Supreme Court " § 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred."  Graham v. Connor, 490 U.S. 386, 393-394 (1989).  Because Constitutional protections are not nearly as extensive as those afforded by the common law tort actions that may arise under state law and in a state court forum, it cannot be assumed that every state tort claim equates to a claim under  § 1983.  Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir.), cert denied, 414 U.S. 1033 (1973)("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers violates one's Constitutional rights."  See also, County of Sacramento v. Lewis, 523 U.S. 833 (1998)(Dismissing § 1983 claim involving fatality resulting from high-speed police pursuit which the Supreme Court considered insufficient to state violation of constitutional rights).

Plaintiff has failed to state a violation of any constitutional right that would permit her complaint to state a claim under §1983 against Anne Arundel County for supervisory liability.  In Monell v. New York City Dept. of Social Servs., 436 U.S. 658 (1978), the Supreme Court, upon analysis of the legislative history of the Civil Rights Act of 1871, concluded that "[l]ocal governing bodies . . . can be sued directly under  § 1983 for monetary, declaratory, or injunctive relief where . . . . the action that is alleged to be unconstitutional, implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."  Id.

10

Moreover, the Court held that, although the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution, local governments "may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision making channels." Id. at 690-91.  Such governmental "custom," however, can only be said to exist in the face of "persistent" and "widespread" practices which, "[a]lthough not authorized by written law, could well be so permanent and well settled as to have the force of law." Id. at 691 (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 167-68 (1970)).  The Monell Court made equally clear that municipal liability could not be premised upon any basis other than the basis it articulated.  Specifically, the Court held that "[i]n particular, we conclude that a municipality cannot be held liable solely because it employs a tortfeasor--or, in other words, a municipality cannot be held liable under §1983 on a respondeat superior theory."  426 U.S. at 691.

Plaintiff has failed to properly allege in Count 3 of the Complaint that her injuries were caused pursuant to an official policy, custom or procedure of Anne Arundel County.  Plaintiff has merely pled an isolated incident that does not give rise to liability being imposed upon Anne Arundel County.  Plaintiff alleges that the Mosmiller was not properly supervised.  Plaintiff appears to base this allegation solely on the fact that she suffered injuries from Mosmiller's illegal act.  Therefore, Plaintiff's §1983 claim may not survive against Anne Arundel County.  A municipality is liable under §1983 only where its policies are the moving force behind the constitutional violation. Monell v. New York City Dept. of Social Services, 436 U.S. 658, 694 (1978).  It is simply not credible to suggest that Anne Arundel County has any type of policy that promoted Mosmiller's illegal conduct.  Moreover, simply alleging blanket allegations of failure to train and failure to

11

supervise is not sufficient to meet the burden of stating a <u>Monell</u> claim.

### a. Failure to Allege Policy, Practice or Custom of the County

Plaintiff has failed to plead facts demonstrating the liability of Anne Arundel County, Chief Teare and former Chief Shanahan.  Anne Arundel County, Chief Teare and former Chief Shanahan cannot be held liable for constitutional violations committed by an employee under the theory of *respondeat superior*.  <u>Monell v. Dept. of Social Services</u>, 436 U.S. 658, 691, 98 S.Ct 2018, 2036 (1978).  To maintain a civil rights action against Anne Arundel County, Teare and Shanahan the Plaintiff must allege that the actions were the result of an unconstitutional policy, practice or custom.  <u>Id</u>. at 694, 98 S.Ct at 2037-38;  <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 479-80, 106 S.Ct 1292, 1298 (1986).

The Plaintiff must state sufficient *facts* in her Complaint to place Anne Arundel County on notice of the nature of the claim against it.  <u>Jordan v. Jackson</u>, 15 F.3d 333, 340 (4th Cir. 1994). There is no heightened pleading standard for complaints alleging violation of §1983.  <u>Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit</u>, 507 U.S. 163, 168, 113 S.Ct 1160, 1163 (1993).  However, "'[b]oilerplate allegations of a municipal policy, entirely lacking in any factual support that a city policy does exist, are insufficient.'  There must be a 'direct causal link between a municipal policy or custom and the alleged constitutional deprivation.'"  <u>Lanigan v. Village of East Hazel Crest, Ill.</u>, 110 F.3d 467, 479 (7th Cir. 1997)(citations omitted). Well-pleaded factual averments and reasonable inferences there from are acceptable under the rules, however this "does not entitle a plaintiff to rest on 'subjective characterizations' or conclusory descriptions of a 'general scenario which could be dominated by unpleaded facts.'"  <u>Judge v. City of Lowell</u>, 160 F.3d 67, 77 (1st Cir. 1998).  In <u>McTigue v. City of Chicago</u>, 60 F.3d 381 (7th Cir. 1995), the Court

found that allegations that a Personnel Board and hearing officers were biased against the employees

was insufficient even with the proffer of statistics allegedly supporting this claim. The Court stated:

> The complaint, however, is deficient because it fails to include a factual basis to describe with any particularity the bias that the plaintiff alleges.  Although Fed.R.Civ.P. 8 does not require detailed factual pleading, a plaintiff's assertions must still direct the defendant to the factual cause of the plaintiff's alleged injury.  Boilerplate allegations of a municipal policy, entirely lacking in any factual support that a [municipal] policy does exist, are insufficient. . . .The absence of any facts at all to support plaintiff's claim renders the allegations mere legal conclusions of section 1983 liability devoid of any well-pleaded facts.

Id. at 382-83.

The requirements for imposing §1983 on a municipality are extremely limited. The Court of

Appeals for the Fourth Circuit in Revene v. Charles County Commissioners, 882 F.2d 870, 874-75

(4th Cir. 1989) noted

> As the Supreme Court has recently explained, while municipalities such as Charles County may be liable under Sec. 1983 for inadequate police training policies that directly cause constitutional deprivations by individual police officers, the test of municipal liability is a most stringent one.  City of Canton v. Harris, 489 U.S. 378, 57 U.S.L.W. 4270, 103 L.Ed.2d 412, 109 S.Ct. 1197 (U.S. Feb. 28, 1989).  To establish municipal liability on this basis, a claimant must allege and prove that a municipal governing body (or its authorized policy-makers) has followed a policy of inadequate training for its police in respect of particular tasks for which "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers . . . can reasonably be said to have been deliberately indifferent to the need," Id. at 57 U.S.L.W. at 4273, 109 S.Ct. at 1205, and that the inadequate training "actually caused" a claimed injury.  Id. at 57 U.S.L.W. at 4274, 109 S.Ct. at 1207.

The requirements are no less severe beyond the allegations of inadequate training.  The

Fourth Circuit in Spell v. McDaniel, 824 F.2d 1380, 1391 (4th Cir. 1987), cert. denied 484 U.S.

13

1027, 108 S.Ct 752 (1988) observed "the substantive requirements for establishing municipal liability for police misconduct are stringent indeed.  The critical Supreme Court decisions have imposed this stringency in a deliberate effort to avoid the indirect or inadvertent imposition of forms of vicarious liability rejected in <u>Monell</u>."  In that case, direct testimony concerning the improper training techniques, advocacy of use of excessive force by the Chief and testimony by former officers specifically about the violent tendencies of the Defendant officers permitted the Plaintiff to satisfy this heavy burden.

The Plaintiff has not taken the first step in alleging municipal liability under §1983: she has not plead facts that identify a specific policy, practice or custom of the County that proximately caused a constitutional violation suffered by her, nor has she alleged any specific facts to show that the actions of Mosmiller were a consequence of a specific policy of the County. Plaintiff is claiming that she was essentially criminally assaulted.  It is not alleged, nor could Plaintiff do so credibly, that Anne Arundel County has an official policy that encourages officers to commit sex offenses or that any police department policies lead to Mosmiller committing the sexual offense.

To the extent that Plaintiff claims that Defendants' hiring of Mosmiller was improper, she has still failed to state a cause of action.  Plaintiff merely alleges generally that Mosmiller "was not qualified to become a police officer.  He did not meet the necessary criteria and/or pass the necessary tests."  Complaint at ¶14.  Notwithstanding Plaintiff's claims, it is uncontroverted that Mosmiller was certified by the Maryland Police Training Commission as required by Md. Code Ann., Public Safety §3-215(b) (2003).  Plaintiff's Complaint merely contains boilerplate allegations that are lacking in any substance and contradicted by the Maryland Police Training Commission's certification of Mosmiller as a police officer.  Consequently, the Plaintiff has failed to plead a

cognizable cause of action against Anne Arundel County, Chief Teare and former Chief Shanahan.

### b.    Causation

Even if a policy or custom were to be alleged, a Plaintiff must prove that the policy or custom caused the specific violation of the Plaintiff's constitutional rights.  Unless the policy itself directed the violation, there must be proof of an "affirmative link" between the policy/custom and violation akin to proximate cause.  Spell v. McDaniel, 824 F.2d 1380, 1388 (4th Cir. 1987).  The requirement of causation was clearly set forth by the Supreme Court in Board of County Commissioners of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 411, 117 S.Ct 1382, 1392 (1997), wherein it stated

> a finding of culpability simply cannot depend on the mere probability that any officer inadequately screened will inflict any constitutional injury.  Rather, it must depend on a finding that *this* officer was highly likely to inflict the *particular* injury suffered by the plaintiff. The connection between the background of the particular applicant and the specific constitutional violation alleged must be strong.

(emphasis in original).

The Fourth Circuit has also recognized "[t]he requirement of a close fit between the unconstitutional policy and the constitutional violation. . . ." Carter v. Morris, 164 F.3d 215, 218 (4th Cir. 1999).  Although the Plaintiff alleged prior instances of excessive force and discouragement of citizen complaints in Carter v. Morris, the Court found that "[u]nfocused evidence of unrelated constitutional violations is simply not relevant to the question of whether a municipal decision maker caused the violation of the specific federal rights of the plaintiff before the court." Id. at 218-219.

Plaintiff has failed to plead a cause of action based upon a theory of supervisory liability.  "A plaintiff must show actual or constructive knowledge of a risk of constitutional injury, deliberate

indifference to that risk, and an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." Id. at 221. See also Spiller v. City of Texas City Police Department, 130 F.3d 162, 167 (5th Cir. 1997)("a plaintiff must allege that 'the custom or policy served as the moving force behind the [constitutional] violation' at issue, or that her injuries resulted from the execution of the official policy or custom. The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts."). The Supreme Court has held that "the mere right to control without any control or direction having been exercised and without any failure to supervise is not enough to support Sec. 1983 liability." Monell v. Dept. of Social Services, 436 U.S. 658, 694 n. 58, 98 S.Ct. 2018, 2037 n. 58 (1978) (citing Rizzo v. Goode, 423 U.S. 362, 370-71, 96 S.Ct. 598, 603-04 (1976)).

Plaintiff may impose supervisory liability on Chief Teare and former Chief Shanahan only if she can show that "supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the injuries they inflict.…" Slakan v. Porter, 737 F.2d 368, 373 (4th Cir. 1984) cert. denied sub nom. Reed v. Slakan, 470 U.S. 1035, 105 S.Ct 1413 (1985).   To establish supervisory liability under Sec. 1983, a plaintiff must show

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a ***pervasive*** and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

Shaw v. Stroud, 13 F.3d 791 (4th Cir. 1994), cert. denied, 513 U.S. 813, 115 S.Ct. 67 (1994).

Further, "establishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the

conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury." Id. at 799 (quoting Slakan, 737 F.2d at 373). In other words, the Plaintiff must show "continued inaction in the face of documented abuses." Shaw, 13 F.3d at 799 (quoting Slakan, 737 F.2d at 373). A single incident does not satisfy this element. Shaw, 13 F.3d at 799.

In the instant case, there are absolutely no facts that suggest that the Mosmiller received improper training or was improperly supervised. Plaintiff merely implies because she was injured by Mosmiller's criminal actions, those actions were caused by inadequate training and/or inadequate supervision. However, there are no allegations of either and Plaintiff should not be permitted to go on a fishing expedition absent any cognizable allegations to support the cause of action. There are no allegations that Defendants were aware of Mosmiller's improper conduct prior to the instant occurrence. It is uncontroverted that Mosmiller was suspended the same date as the incident with Plaintiff.

There are no facts pled to suggest that Defendants' actions in hiring Mosmiller as an Anne Arundel County Police Officer lead to the incident with Plaintiff and caused Plaintiff's injuries. Given the fact that Mosmiller was certified by the Police Training Commission according to the standards promulgated by the Commission, it is not possible to make such allegations. The stringent and necessary causal nexus required by §1983 jurisprudence as plead is woefully inadequate.

> **2.    Plaintiff's §1983 claims against Defendants Teare and Shanahan in Count 3 are barred by qualified immunity.**

Qualified immunity is an affirmative defense that may be pled by a defendant in a §1983 action in conformity with Harlow v. Fitzgerald, 457 U.S. 800 (1982). The Supreme Court has instructed that a court evaluating a qualified immunity claim must first determine whether the

plaintiff has alleged the deprivation of a Constitutional right, and if so, proceed to determine whether that right was clearly established at the time of the violation. <u>Wilson v. Layne</u>, 526 U.S. 603 (1999). Only after having decided the Constitutional question before it, can the court then address the qualified immunity question. <u>Wilson v. Layne</u>, 526 U.S. 603 (1999).

In order to determine whether an officer's conduct is immunized, the United States Court of Appeals for the Fourth Circuit has formulated a three-step analysis: (1) identify the right allegedly violated; (2) decide whether that right was clearly established at the time of the alleged violation; and, if so, (3) determine whether a reasonable person in the officer's position would have known that his or her actions violated that right. <u>Pritchett v. Alford</u>, 973 F.2d 307, 312 (4th Cir. 1992).

Government officials, including police officers, are entitled to qualified immunity for discretionary acts performed in connection with their public service, as long as they do not violate "clearly established" rights of which a reasonable officer would know. <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818, 73 L. Ed. 2d 396, 102 S. Ct. 2727 (1982). For a right to be clearly established, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." <u>Anderson v. Creighton</u>, 483 U.S. 635, 640, 97 L. Ed. 2d 523, 107 S. Ct. 3034 (1987).

Even taking all of Plaintiff's allegations as true and assuming solely for the purposes of this motion that there was a constitutional violation, there is simply no indication that Defendants Teare and Shanahan would have known that their actions violated any of Plaintiff's rights. Defendants Teare and Shanahan are entitled to qualified immunity.

C.    **State Law Claims**

1.    **Plaintiff may not maintain a state law tort claim directly against Anne Arundel County.**

Counts 1, 4, 6, 8 and 11 of the Complaint purport to plead state law tort claims directly against Anne Arundel County.  Plaintiff may not maintain a tort action directly against Anne Arundel County.  The Local Government Tort Claims Act, Md. Code Ann., Cts. & Jud. Proc. §5-301, *et seq*. (2006 repl. vol.) ("LGTCA"), precludes a direct action against a local municipality based upon the actions of an employee.

The pertinent portions of the LGTCA provide as follows:

> . . . [A] local government shall be liable for any judgment against its employee for damages resulting from tortious acts or omissions committed by the employee within the scope of employment with the local government.
>
> A local government may not assert governmental or sovereign immunity to avoid the duty to defend or indemnify an employee established in this subsection.

Md. Code Ann., Cts. & Jud. Proc. §5-303(b)(1)(2) (2006 repl. vol.).  Subsections 5-303(b)(1) and (2) of the Local Government Tort Claims Act do not authorize a direct action against a local governmental entity.  These sections merely hold that, under certain situations, if a judgment is entered against an employee of the local government, the local governmental entity is required to indemnify the employee.  Additionally, §5-303(d) and (e) state:

> (d) Notwithstanding the provisions of subsection (b) of this section, this subtitle does not waive any common law or statutory defense or immunity in existence as of June 30, 1987, and possessed by an employee of a local government.
>
> (e) A local government may assert on its own behalf any common law or statutory defense or immunity in existence as of June 30, 1987, and possessed by its employee for whose tortious act or omission the claim against the local government it premised  . . . .

19

Md. Code Ann., Cts. & Jud. Proc. §5-303(d)(e)(2006 repl. vol.).  Sections 5-303(d) and (e) expressly

reserve the preexisting common law and statutory defenses and immunities of local government

employees and the right of the local government to assert such defenses and immunities.  It is clear

that the LGTCA does not authorize a direct action against Anne Arundel County and there is ample

case law to support this proposition. In  Nam v. Montgomery County, 127 Md.App. 172, 732 A.2d

356 (1999), Plaintiffs brought suit against Montgomery County for damages arising from the death

of their daughter.  The circuit court granted Montgomery County's motion to dismiss based upon the

doctrine of governmental immunity.  On appeal, the Plaintiffs argued that the passage of the LGTCA

waived the county's common law governmental immunity.  In rejecting this argument the Court of

Special Appeals stated:

> In Bradshaw v. Prince George's County, [284 Md. 294, 300, 396 A.2d
> 255 (1979),] Chief Judge Murphy, after quoting from the opinion by
> Judge Barnes for the Court in Godwin v. County Comm'rs, [supra,
> 256 Md. 326, 334-35, 260 A.2d 295] discussing the extent of a
> county's governmental immunity, said for the Court, "[A]
> municipality or county is liable for its torts if it acts in a private or
> proprietary capacity, while it is immune if acting in a governmental
> capacity."
>
> It is the belief of the [the plaintiffs] that passage by the General
> Assembly of the [LGTCA] changes all of this. Such is not the case. . .
> . Nowhere in the Act . . . is there a waiver of immunity so that the
> governmental entity is subject to being made a party to an action
> based upon its employee's or agent's tortious acts. *The governmental
> entity's liability is analogous to a public liability policy on an
> automobile. The insurance company is liable for such damages as its
> [insured] may inflict, but, generally speaking, the insurance company
> is not an entity which may be sued for its [insured's] torts.*

127. Md.App. at 183-84, 723 A.2d at 362-363 (emphasis supplied).

The LGTCA simply does not waive governmental immunity and direct actions against a

local governmental entity remain prohibited.  There is an excellent discussion of this entire concept

in the case of <u>Baltimore Police Dept. v. Cherkes</u>, 140 Md.App. 282, 318-321, 780 A.2d 410, 431-433 (2001) ("On several occasions, the Maryland appellate courts have examined the statutory scheme put into place by the LGTCA and have held that the act neither authorizes a direct action against a local government nor waives the common law governmental immunity of an entity designated as a local government.").  <u>See</u> <u>also</u>, <u>Williams v. Mayor of Baltimore</u>, 128 Md. App. 1, 35, 736 A.2d 1084 (1999) ("The LGTCA did not waive any governmental immunity enjoyed by [a local government] against citizens at large. It waived only that immunity which the [local government] might have asserted in an effort to avoid its responsibility to defend and to indemnify its employees." (<u>citing</u> CJ § 5-303(b)(2)), <u>rev'd on other grounds</u>, 359 Md. 101, 753 A.2d 41 (2000); <u>Williams v. Prince George's County</u>, 112 Md. App. 526, 552, 685 A.2d 884 (1996) (noting that CJ "§ 5-303 does not provide a method for directly suing the County or other local governments," but, instead, limits "the liability of local governments and requires them to provide a defense to their employees under certain circumstances"); <u>Khawaja v. Rockville</u>, 89 Md.App. 314, 598 A.2d 489 (1991), <u>cert</u>. <u>granted</u>, 325 Md. 551, 601 A.2d 1114, <u>appeal</u> <u>dismissed</u>, 326 Md. 501, 606 A.2d 224 (1992) (The LGTCA contains no specific waiver of governmental immunity when a governmental entity is sued in its own capacity);

Federal courts have also uniformly held that the LGTCA does not authorize a direct action against a local government.

> [B]efore enactment of the LGTCA, local governments were immune for common law tort liability. The LGTCA provides that local governments will be liable for "any judgment against its employee for damages resulting from tortious acts or omissions committed by the employee within the scope of employment with the local government." See MD. CODE ANN., CTS. & JUD. PROC. § 5-303. The LGTCA does not, however, allow the Martinos to name Howard

County directly in a common law tort suit. <u>See</u> <u>Dawson v. Prince
George's County</u>, 896 F. Supp. 537, 539 (D. Md. 1995).

<u>Martino v. Bell,</u> 40 F.Supp.2d 719, 722-723 (D. Md. 1999).  <u>See also</u>, <u>Williams v. Prince George's
County</u>, 157 F.Supp.2d 596, 603-4 (D. Md. 2001) (County entitled to summary judgment on
common law tort claims); <u>Pavelka v. Carter</u>, 996 F.2d 645, 649 (4th Cir. 1993) ("The LGTCA does
not waive local government immunity when a local government entity is sued in its own capacity."
(citation omitted)); <u>Gray-Hopkins v. Prince George's County</u>, 309 F.3d 224, 234 (4th Cir. 2002)
(County enjoys governmental immunity with respect to the claims that seek to impose *respondeat
superior* liability for a tort committed by an employee); <u>Vincent v. Prince George's County</u>, 157
F.Supp.2d 588, 594 (D. Md. 2001) (A county is immune from common law tort claims asserted
against it based on torts committed by its police officers); <u>Solis v. Prince George's County</u>, 153
F.Supp.2d 793, 805-806 (D. Md. 2000) (County is not subject to suit with respect to Plaintiff's
common law tort claims); <u>Dawson v. Prince George's County</u>, 896 F.Supp. 537, 539 (D. Md. 1995)
(LGTCA does not create liability on the part of the County for state law claims).

In addition to the plain language of the LGTCA, there is simply an overwhelming weight of
authority that holds that the LGTCA does not waive governmental immunity.  Therefore, Plaintiff
may not maintain state law counts against Anne Arundel County in the instant action.

> **2.    Counts 1, 4, 6, 8 and 11 should be dismissed because Anne Arundel
> County has governmental immunity for all state law claims related to
> the operation of its police force.**

Anne Arundel County enjoys governmental immunity for claims related to the operations of
its police department.  The broad doctrine of sovereign immunity for the state or its agencies is
firmly established in Maryland.  In <u>American Structures v. City of Baltimore</u>, 278 Md. 356, 364
A.2d 55 (1976), the principle was stated as follows:

> In Maryland, the rule of our cases is clear. If an action is brought for a money judgment in contract or tort against the State or an agency of the State without the State's consent, actual or implied, it must be defended on the grounds of sovereign immunity, which cannot be waived unless funds have been appropriated for the purpose or the agency can provide funds by taxation.

Id. at 359 (Citations omitted.).

Unlike the total immunity granted to the state and its agencies with respect to actions arising in tort, however, the immunity of counties, municipalities or local governmental agencies in such actions is limited in scope. In a tort action, it has been held that a political subdivision may invoke the defense of governmental immunity only when the alleged tortious conduct occurred while the county or municipality was exercising a "governmental" rather than a "proprietary" function. O. & B., Inc. v. Maryland-National Capital Park and Planning, 279 Md. 459, 462, 369 A.2d 553 (1977); Carey v. Baltimore County, 262 Md. 491, 278 A.2d 6 (1971); Robinson v. Board of County Comm'rs, 262 Md. 342, 278 A.2d 71 (1971); Baltimore v. State, 173 Md. 267, 271-72, 195 A. 571 (1937).

There is, however, no universally accepted test for determining when an act is governmental or private in nature, "but the question is usually determined by the public policy recognized in the jurisdiction where it arises." Baltimore v. State, 173 Md. at 275-76. The test to be applied by Maryland courts is a determination of whether:

> the act in question is sanctioned by legislative authority, is solely for the public benefit, with no profit or emolument enuring to the municipality, and tends to benefit the public health and promote the welfare of the whole public, and has in it no element of private interest . . . .

Id. at 276. If the answer is in the affirmative, the act is governmental in nature and immunity applies. Conversely, if the answer is in the negative, it is a proprietary function and immunity may

not be successfully pleaded.  E. Eyring and Sons Co. v. City of Baltimore, 253 Md. 380, 383, 252

A.2d 824 (1969).

There is no genuine dispute that a municipality's operation of a police department is a

governmental function.  This principle has been stated as follows:

> For those jurisdictions subscribing to the dichotomy between
> governmental and proprietary functions it is firmly established that
> the operation of a police department is a governmental function, and
> that the acts or omissions in connection therewith ordinarily do not
> give rise to liability on the part of the municipality.

McQuillin Mun. Corp. § 53.51 (3d ed.).

This principle has long been recognized in Maryland.  In Wynkoop v. Hagerstown, 159 Md.

194, 150 A. 447 (1930), the Court of Appeals recognized that:

> [t]he protection of the citizen against pestilence, disease, violence, or
> disorder, is essentially a governmental function to be exercised by the
> state under its police power, through proper agents.  And while in
> many cases it is difficult on the facts to mark the boundary between
> acts and duties which are in their essence governmental, and those
> which are of a corporate or municipal nature, that doubt does not
> exist in respect to the duties of agencies charged with the
> administration of the criminal laws, the conservation of the public
> peace, or the protection of the citizen from violence.  But the acts of
> such agencies done in the performance of duties imposed upon them
> by law are almost everywhere regarded as governmental in their
> nature, and for the benefit of the entire public.

Id. at 201.  See also  Quecedo v. Montgomery County, 264 Md. 590, 287 A.2d 257 (1972);

Buffington v. Baltimore County, 913 F.2d 113, 123-125 (4th Cir. 1990), rehearing denied, en banc,

(October 15, 1990), cert. denied 499 U.S. 906 (1991).

As alleged, Plaintiff's state law claims against Defendant Anne Arundel County relate to its

operation of the police department, which is inherently a governmental function.  The law on this

point is clear and settled.  Liability may not be imposed on Anne Arundel County based upon the

action or inactions of its police department.  The allegations in the Complaint that form the basis of this action all relate solely to the police department.   Accordingly, Anne Arundel County is governmentally immune from the state law claims set forth in Counts 1, 4, 6, 8 and 11 of the Complaint as well as any of the other state law counts that the court determines have been pled against the County.

> **3.** **There is no separate claim for *"Respondeat Superior"* (Count 8) under Maryland law.**

The doctrine of *respondeat superior* is a means of holding employers vicariously liable for the tortious conduct of an employee acting within the scope of his/her employment. See Williams v. Maynard, 359 Md. 379, 380-82, 754 A.2d 379, 380 (2000); Housing Authority of Baltimore City v. Bennett, 359 Md. 356, 362, 754 A.2d 367, 370 (2000); DiPino v. Davis, 354 Md. 18, 47-50, 729 A.2d 354, 369-70 (1999); Ashton v. Brown, 339 Md. 70, 104, 660 A.2d 447, 464 (1995).  The doctrine of *respondeat superior* is properly asserted within an underlying count, for example with respect to non-governmental employers, negligence or other general torts.  However, with respect to a governmental entity, only a state constitutional claim may be asserted against a municipality on a *respondeat superior* basis.  Serio v. Baltimore County, 384 Md. 373, 397-398, 863 A.2d 952, 966-967 (2004).  Therefore, Count 8 of the Complaint does not state a claim upon which relief may be granted.

> **4.** **Counts 1, 4, 6, 8 and 11 should be dismissed because Chief Teare and former Chief Shanahan are not subject to liability on state law claims because of public official immunity.**

In Maryland police officers generally enjoy immunity for their discretionary actions within the scope of employment.  The requirements for Maryland's common law public official immunity were set forth by Judge J. Dudley Digges in James v. Prince George's County, 288 Md. 315, 323-2, 418 A.2d 1173 (1980), as follows:

> Before a governmental representative in this State is relieved of liability for his negligent acts, it must be determined that the following independent factors simultaneously exist:   (1) the individual actor, whose alleged negligent conduct is at issue, is a public official rather than a mere government employee or agent; and (2) his tortious conduct occurred while he was performing discretionary, as opposed to ministerial, acts in furtherance of his official duties
>
> . . . .  Once it is established that the individual is a public officer and the tort was committed while performing a duty which involves the exercise of discretion, a qualified immunity attaches; namely, in the absence of malice, the individual involved is free from liability.

Id. at 323-324 (emphasis in original) quoted with approval, Ashton v. Brown, 339 Md. 70,  116, 660 A.2d 447 (1995).

The law of public official immunity was again analyzed in the case of Thomas v. City of Annapolis, 113 Md.App. 440, 688 A.2d 448 (1997) in which Judge Eyler stated:

> . . . that a public official, such as a policeman or a fireman, in performing his or her discretionary duties within the scope of employment, in the absence of actual malice and without actual knowledge of wrongdoing, generally will not have committed actionable conduct.  This is because the individual will not be guilty of an intentional tort in the first instance because the conduct is legally justified or, alternatively, depending on a court's conceptual analysis, be subject to some qualified or conditional privilege other than public official immunity.

Id. at 457.  See also  Bradshaw v. Prince George's County, 284 Md. 294, 396 A.2d 255 (1979) (Police officers are protected by qualified immunity against civil liability for non-malicious acts performed within the scope of their authority).

Whether a public official's actions are ministerial or discretionary is a question of law for the court. McCoy v. Hatmaker, 135 Md.App. 693, 719, 763 A.2d 1233 (2000), cert. denied, 364 Md.

141, 771 A.2d 1070 (2001) (discussing DiPino v. Davis, 354 Md. 18, 48-49, 729 A.2d 354 (1999));

Town of Port Deposit, 113 Md.App. at 414-15. "An act falls within the discretionary function of a

public official if the decision which involves an exercise of his personal judgment also includes, to

more than a minor degree, the manner in which the police power of the State should be utilized."

James v. Prince George's County, 288 Md. 315, 327, 418 A.2d 1173 (1980).  "It is clear that

policemen are 'public officials' . . . and that when they are within the scope of their law enforcement

functions they are clearly acting in a discretionary capacity." Robinson v. Board of County Comm'rs,

262 Md. 342, 347, 278 A.2d 71 (1971) (citing Wilkerson v. Baltimore County, 218 Md. 271, 146

A.2d 28 (1958)); Harris v. Mayor of Baltimore, 151 Md. 11, 133 A. 888 (1926); Eliason v. Funk,

233 Md. 351, 196 A.2d 887 (1964); see Clea v. Baltimore, 312 Md. 662, 672, 541 A.2d 1303 (1988);

Williams v. Prince George's County, 112 Md.App. 526, 550, 685 A.2d 884 (1996)

("Unquestionably, the actions of police officers within the scope of their law enforcement function

are quintessential discretionary acts." (citations omitted)); Briddell v. Chester, 206 F.Supp.2d 733,

740 (D. Md. 2002).  The authority to hire or fire is discretionary.  Behan v. Gagliano, 84 Md.App.

719, 722, 581 A.2d 854 (1990), cert. denied 322 Md. 239, 587 A.2d 246 (1991).   There   is   no

allegation in the Complaint that the Chief Teare and former Chief Shanahan were acting outside the

scope of their law enforcement functions during the events in question.

   In order to defeat public official immunity, Plaintiff must plead with specificity that the

Chief Teare and former Chief Shanahan acted with malice.  Malice is established by proof that the

defendant-officer "intentionally performed an act without legal justification or excuse, but with an

evil or rancorous motive influenced by hate, the purpose being to deliberately and willfully injure

the plaintiff."  Leese v. Baltimore County, 64 Md. App. 442, 480, 497 A.2d 159, cert. denied 305

27

Md. 106, 501 A.2d 845 (1985), overruled on other grounds by Harford County v. Town of Bel Air, 348 Md. 363, 704 A.2d 421 (1998). See also Town of Port Deposit v. Petetit, 113 Md.App. 401, 416, 688 A.2d 54, 62, cert. denied 346 Md. 27, 694 A.2d 950 (1997).

In this case, Plaintiff has not alleged with specificity any malicious or willful acts. Eliason v. Funk, 233 Md. 351, 357, 196 A.2d 887 (1964), requires a plaintiff to allege sufficient facts from which malice could be inferred. This rule was re-affirmed in Green v. Brooks, 125 Md. App. 349, 377, 725 A.2d 596 (1999), wherein the court held that to defeat immunity, a plaintiff must aver with some precision and clarity those facts that make the act malicious. In the case at bar, Plaintiff has failed to plead with particularity.

The United States Supreme Court in Crawford-El v. Britton, 523 U.S. 574 (1998), addressed the issue of specificity in pleading in suits against governmental officials. Justice Stevens initially discussed the judicial policy supporting public official immunity. A strong public interest exists in protecting public officials from litigation costs associated with the defense of damage actions. Other public policies buttress this immunity, such as the avoidance of diversion of official energy from pressing public issues, the deterrence of competent citizens from the acceptance of public office, and the danger that fear of being sued will dampen the ardor of all but the most resolute or the most irresponsible government officials in the discharge of their duties. Id. at 590 n.12.

Citing Justice Powell's opinion in Harlow v. Fitzgerald, 457 U.S. 800, 817-18 (1982), Justice Stevens observed that bare allegations of malice are not sufficient to subject public officials either to the burden of broad-reaching discovery or the expense of trial. 523 U.S. at 588. In managing such litigation, the Court suggested that a plaintiff be required to put forward specific non-conclusory

factual allegations that established improper motive in order to survive a dismissal motion.  523 U.S. at 598.

In applying the above principles, it is obvious that Plaintiff has failed to reach this threshold. There is no allegation in the Complaint that Chief Teare or former Chief Shanahan had ever encountered Plaintiff prior to the day of the occurrence.  All of the allegations against Chief Teare and former Chief Shanahan are simply managerial in nature.

In the case at bar, Plaintiff has failed to plead any allegations upon which a reasonable fact finder may infer that the Chief Teare and former Chief Shanahan acted with malice towards Plaintiff. There is not a scintilla of evidence that Chief Teare and former Chief Shanahan harbored any ill will or evil motive toward Plaintiff.  See Williams v. Prince George's County, 112 Md.App. 526, 550-1, 685 A.2d 884, 896-7 (1996).  Therefore, all state law counts against Chief Teare and former Chief Shanahan are barred by the doctrine of qualified immunity and must be dismissed.

**5.      Plaintiff has failed to state a claim against Defendants under Count 4, Intentional Infliction of Emotional Distress.**

There are "four elements which must coalesce to impose liability for intentional infliction of emotional distress. . . ." Those elements are:

(1) The conduct must be intentional or reckless;

(2) The conduct must be extreme and outrageous;

(3) There must be a causal connection between the wrongful conduct and the emotional distress;

(4) The emotional distress must be severe.

29

Harris v. Jones, 281 Md. 560, 566, 380 A.2d 611 (1977).  Each of these four requirements must be satisfied completely before a cause of action will lie; meeting even one element less than fully will not suffice.  Hamilton v. Ford Motor Credit Co., 66 Md. App. 46, 502 A.2d 1057 (1986).

The tort of intentional infliction of emotional distress was initially recognized in Maryland by the Court of Appeals in Harris v. Jones, 281 Md. 560, 380 A.2d 611 (1977). Maryland litigants have been quick to test its limits, eager to assert that its principles should be extended to the facts of their particular cases. In Harris, the Court of Appeals was asked to recognize a cause of action for an employee with a speech impediment against a supervisor who repeatedly mimicked and taunted him, exacerbating his nervous condition. The cross-appellant in Continental Casualty Company v. Mirabile, 52 Md.App. 387, 449 A.2d 1176 (1982), argued that he had established a cause of action by alleging that his supervisor gave him a low evaluation, moved him from desk to desk, hummed at him, made faces at him, yelled and screamed at him to move away from a certain desk, and tapped him on the nose and pushed him. In Beye v. Bureau of National Affairs, 59 Md.App. 642, 477 A.2d 1197 (1984), a discharged employee insisted that he was entitled to recover from his supervisors who gave him poor performance ratings, passed over him to promote less qualified individuals, appointed as his supervisor a man whom appellant had attempted to have prosecuted, and deceived him into resigning. In Dick v. Mercantile-Safe Deposit and Trust Company, 63 Md.App. 270, 492 A.2d 674 (1985), debtors sought recovery from their creditor because its collection agent shouted angrily at them, threatened to attach their homes and wages, demanded payment in cash only, yelled at them over the telephone, and accused one of them of lying. In Leese v. Baltimore County, 64 Md.App. 442, 497 A.2d 159 (1985), a disappointed applicant argued he had made out a cause of action when he argued that by virtue of a "sham" interview and because of personal bias and the

application of a different standard in judging him than was applied to other applicants he was denied

a full-time position in the Department of Aging and relegated to a non-merit, part-time position. In

each case it was held that the facts alleged did not support a cause of action for intentional infliction

of emotional distress.

There are insufficient allegations against the Teare and Shanahan to state a cause of action

for intention infliction of emotional distress.  Plaintiff alleges that Defendants initially did not

believe Plaintiff when she reported the incident.  Complaint at ¶38.  There is no allegation that Chief

Teare or former Shanahan that did not believe Plaintiff, nor could there be because Plaintiff did not

report the incident to either of them. Plaintiff also alleges that Defendants "issu[ed] Plaintiff

numerous, frivolous and merit less citations after she reported the incident." Complaint at ¶38.

There is no allegation that either Chief Teare or former Chief Shanahan issued Plaintiff citations, nor

could there be because generally chiefs of police do not issue citations, nor did they in this case.

Moreover, former Chief Shanahan was no longer with the Police Department when the incident

occurred in January, 2007.

The necessary elements of the tort of Intentional Infliction of Emotional Distress are simply

not alleged, nor is it possible for the elements to be alleged given the factual scenario that Plaintiff

claims occurred.  There is no allegation that Teare or Shanahan ever met the Plaintiff prior to the

date of this incident.  It is simply not credible to suggest that Teare or Shanahan harbored any ill will

whatsoever toward Plaintiff. Count 4 should be dismissed against Teare and Shanahan.

> **6.      Count 6 of the Complaint, "Unreasonable Publicity to Private Life,"
>          fails to state a claim against Defendants Anne Arundel County
>          and the Anne Arundel County Police Department.**

As indicated supra, the Anne Arundel County Police Department is not a separate entity capable of being sued.  Moreover, suit is not proper against Anne Arundel County as set forth above. Nevertheless, even in the event those arguments are unsuccessful, Count 6 must fail.

Maryland currently recognizes four forms of invasion of privacy:

    1.      An unreasonable intrusion upon the seclusion of another;

    2.      An appropriation of the other's name or likeness;

    3.      Unreasonable publicity given to the other's private life; and

    4.      Publicity which unreasonably places the other in a false light before  the public.

Klipa v. Bd. of Educ. of A.A. Co., 54 Md.App. 644, 652, 460 A.2d 601 (1983); Household Fin. Corp. v. Bridge, 252 Md. 531, 537, 250 A.2d 878 (1969).

Maryland cases look to the definitions and comments contained in the Restatement in applying invasion of privacy law. See Hollander v. Lubow, 277 Md. 47, 351 A.2d 421, 424-26 (Md. 1976); see also Bagwell v. Peninsula Regional Medical Center, 106 Md. App. 470, 665 A.2d 297, 318-19 (1995).

"§ 652D. Publicity Given To Private Life

One who gives publicity to a matter concerning the private life of another is subject to liability to the other for unreasonable invasion of his privacy, if the matter publicized is of a kind which

(a) Would be highly offensive to a reasonable person, and

(b) Is not of legitimate concern to the public."

Klipa v. Bd. of Educ. of A.A. Co., 54 Md.App. 644, 654-655, 652, 460 A.2d 601 (1983).

To state a cause of action for Unreasonable Publicity to Private Life, it must be alleged that, the matter disclosed must be a private fact and it must be made public. With respect to the latter

requirement, Comment (a) to § 652D makes clear that "it is not an invasion of the right of privacy, within the rule stated in this Section, to communicate a fact concerning the plaintiff's private life to a single person or even to a small group of persons."   Pemberton v. Bethlehem Steel Corporation, 66 Md. App. 133, 502 A.2d 1101 (1986), citing Vogel v. W.T. Grant Company, 458 Pa. 124, 327 A.2d 133 (1974); Tureen v. Equifax, Inc., 571 F.2d 411 (8th Cir.1978).

The only allegation in Count 6 related to Anne Arundel County is that it "publicized Plaintiff's Complaint against Defendant Mosmiller."  Complaint at ¶48.  Plaintiff fails to point to any specifics relating to Plaintiff's name being publicized as a result of any actions taken by Anne Arundel County. The incident did receive publicity from both newspapers and television due to the fact that Defendant Mosmiller was criminally prosecuted for his actions related to Plaintiff Flanagan. Additionally, Plaintiff testified at Mosmiller's criminal sentencing.  There has also been a fair amount of publicity generated by Plaintiff relating to the filing of the instant lawsuit.

It is simply unfortunate that allegations such as those related to Mosmiller are often reported in detail in the media. Anne Arundel County is not able to control stories in the media.  However, it does not appear that any of the media have identified Plaintiff.  Count 6 should be dismissed.

> **7.      Count 2 of the Complaint, "Violation of Maryland Declaration of Rights," fails to state a claim against any of the Defendants.**
>
> > **a.      The failure to train and failure to supervise counts should be dismissed based upon the arguments in response to the Federal claims.**

To the extent that a provision of the Maryland constitution is held to be in pari materia with a federal counterpart, the two constitutional provisions are applied "'in like manner and to the same extent,'" and "'decisions of the Supreme Court on the [federal provision] are practically direct authorities'" for interpreting the Maryland provision.  Attorney General of Maryland v. Waldron,

289 Md. 683, 704-05, 426 A.2d 929 (1981) (quoting United States Mortgage Co. v. Matthews, 167

Md. 383, 395, 173 A. 903,  rev'd on other grounds, 293 U.S. 232 (1934), and Bureau of Mines v.

George's Creek Coal & Land Co., 272 Md. 143, 156, 321 A.2d 748 (1974)).   Because Plaintiff has

failed to state a claim under the United States Constitution as detailed above, the claims pled under

the Maryland Constitution must fail as well.


   **b.**  **Anne Arundel County may not be held liable for the**
       **actions of Mosmiller under the doctrine of**
       ***respondeat superior*.**

   Local governmental entities do have *respondeat superior* liability for civil damages resulting

from State Constitutional violations committed by their agents and employees within the scope of

the employment. Dipino v. Davis, 354 Md. 18, 51-52, 729 A.2d 354, 372 (1999). Under the doctrine

of *respondeat superior*, an employer is jointly and severally liable for the torts committed by an

employee acting within the scope of his employment. Southern Mgmt. Corp v. Taha, 137 Md. App.

697, 719, 769 A.2d 962 (2001) (citing DiPino, 354 Md. at 47; Oaks v. Connors, 339 Md. 24, 30, 660

A.2d 423 (1995);  Tall v. Board of School Comm'rs, 120 Md. App. 236, 251, 706 A.2d 659 (1998)).

"An employee's tortious conduct is considered within the scope of employment when the conduct is

in furtherance of the business of the employer and is authorized by the employer." Tall, 120 Md.

App. at 251 (citing Ennis v. Crenca, 322 Md. 285, 293, 587 A.2d 485 (1991); Sawyer v. Humphries,

322 Md. 247, 255, 587 A.2d 467 (1991)).

   It is clear that Mosmiller's sexual assault of Plaintiff was outside the scope of his duties as a

police officer. In Wolfe v. Anne Arundel County, 374 Md. 20, 821 A.2d 52  (2003), a police officer

stopped Wolfe on suspicion of Driving While Intoxicated.  The officer told Wolfe he would drive

her home, but instead drove to the parking lot of a church and sexually assaulted her.  In holding that

the officer's actions were not within the scope of his duties as a police officer, the Court of Appeals

of Maryland stated: "[Officer] Ziegler's detour to the church parking lot and assault upon Ms. Wolfe

was neither authorized nor permitted nor within any dual purpose doctrine. It was criminal."  Id. at

36, 821 A.2d at 62.

As stated in Sawyer v. Humphries, 322 Md. 247, 587 A.2d 467 (1991):

> [I]n cases involving intentional torts committed by an employee, this Court has emphasized that where an employee's actions are personal, or where they represent a departure from the purpose of furthering the employer's business, or where the employee is acting to protect his own interests, even if during normal duty hours and at an authorized locality, the employee's actions are outside the scope of his employment.

Id. at 256-257, 587 A.2d at 471.  The Court of Appeals further stated:

> [w]here the conduct of the servant is unprovoked, highly unusual, and quite outrageous, courts tend to hold "that this in itself is sufficient to indicate that the motive was a purely personal one" and the conduct outside the scope of employment.  *Prosser and Keeton On The Law Of Torts, supra*, at 506. *See Henley v. Prince George's County*, 305 Md. 320, 330 n. 2, 503 A.2d 1333, 1338 n. 2 (1986)

Sawyer v. Humphries, 322 Md. 247, 257, 587 A.2d 467, 471-472 (1991).

The Court of Appeals of Maryland has often held an assault by an employee was outside the

scope of employment even though the assault occurred at a time when the employee was "on duty."

Henley v. Prince George's County, supra, 305 Md. at 326, 330 n. 2, 503 A.2d at 1336, 1338 n. 2;

LePore v. Gulf Oil Corp., 237 Md. 591, 207 A.2d 451 (1965).  See also  City of Green Cove Springs

v. Donaldson, 348 F.2d 197, 202 (5th Cir.1965) (involving an on-duty police officer, and the court

pointed out that "liability for an assault by an employee that bears no relation to the real or apparent

scope of his employment or to the interest of his employer is not imposed upon the employer under the doctrine of respondeat superior").

Plaintiff alleges that Mosmiller:

1)    Stopped the vehicle she was operating at 1:30 a.m. Complaint at ¶6.

2)    Ordered Plaintiff to follow him in her vehicle to the Rivera Beach library.  Complaint at ¶6.

3)    Left the scene, apparently to respond to another call, and ordered Plaintiff not to leave until he returned.  Complaint at ¶6.

4)    Returned to Plaintiff's vehicle at a later time and ordered Plaintiff to again follow him in her vehicle to the Community United Methodist Church, a short distance away.  Complaint at ¶6.

5)    Performed several field sobriety tests upon Plaintiff and informed her that she had failed the tests, notwithstanding the fact that she was not intoxicated. Complaint at ¶6.

6)    Told Plaintiff that he would take her to jail unless she would, "show me your tits." Complaint at ¶6.

7)    Plaintiff complied with Officer Mosmiller's request and lifted her shirt.  Complaint at ¶6.

8)    Officer Mosmiller touched Plaintiff's breast and took a picture with his cell phone. Complaint at ¶6.

9)    Did not call in his stop of Plaintiff in violation of police procedure.  Complaint at ¶7.

10)   Allowed Plaintiff to leave without charging her with any violations.  Complaint at ¶6.

It is clear that Officer Mosmiller was outside the scope of his police duties.  Even assuming solely for the sake of this motion that the initial stop was legitimate, when Officer Mosmiller left

Plaintiff to respond to another call and instructed her to wait for him to return, he had ceased all valid police duties and had already formed the intent to deviate from official police duties. No police officer would ever leave an allegedly intoxicated driver on the side of the road with instructions to wait for him to return. Mosmiller failed to call the traffic stop in to the police dispatch operator, violating basic protocol in an attempt to conceal his actions. Moreover, Mosmiller instructed Plaintiff to twice move her vehicle to different locations. Mosmiller was attempting to locate a secluded area to conduct his misdeeds upon Plaintiff. Mosmiller coerced Plaintiff to expose herself by lying about her sobriety test. Mosmiller then committed a sexual offense against Plaintiff. Mosmiller ultimately admitted all of these facts when he pled guilty to the associated criminal charges. Mosmiller's detour to the church parking lot, the second such move, had nothing to do with the scope of this duties. Mosmiller's assault of Plaintiff was not even remotely related to any legitimate police activities and purely personal in nature.

The damages sought by Plaintiff relate to Mosmiller's illegal actions taken outside the scope of his police duties. Plaintiff is essentially making claims for damages for Mosmiller's sexual assault. None of the damages sought by Plaintiff result from traditional police activity.

None of Mosmiller's action detailed above were within the scope of his duties as an Anne Arundel County Police Officer. Mosmiller was attempting to advance his own agenda in assaulting Plaintiff. Therefore, Anne Arundel County may not be liable under the doctrine of *respondeat superior* for Mosmiller's alleged state Constitutional violations.

## IV. CONCLUSION

Plaintiff has failed to state a claim upon which relief may be granted against Defendants Anne Arundel County, Anne Arundel County Police Department, Chief James Teare, Sr. and former

chief Thomas Shanahan.  The actions of Defendant Mosmiller were not within the scope of his

employment with Anne Arundel County.

**WHEREFORE**, Defendants Anne Arundel County, Anne Arundel County Police

Department, James Teare, Sr. and  Thomas Shanahan respectfully request that this honorable Court

grant their Motion to Dismiss, order that judgment be entered in their favor and against Plaintiff, and

such other and further relief as justice and their cause may require.

JONATHAN A. HODGSON
County Attorney

_____/S/_____
Hamilton F. Tyler
Federal Bar No. 09423
Senior Assistant County Attorney
Anne Arundel County Office of Law
2660 Riva Road, 4th Floor
Annapolis, Maryland 21401
(410) 222-7888
*Attorney for Defendants Anne Arundel County,*
*Anne Arundel County Police Department,*
*James Teare, Sr. and  Thomas Shanahan*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on the 4th day of April, 2008, a copy of Defendant's
Memorandum of Law in Support of Motion to Dismiss was mailed (because Defendant Mosmiller is
not yet represented and not receiving filings electronically) first class with postage prepaid to:

Mr. Joseph F. Mosmiller
7792 Moonfall Court East
Pasadena, Maryland 21122
*Defendant*

_____/S/_____
Hamilton F. Tyler

38